UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KELLI FRIEDLY,

        Plaintiff,

        v.                                              **DECISION AND ORDER**
                                                                                       19-CV-486S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

        1.        Plaintiff Kelli Friedly brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her applications for supplemental security income and disability insurance benefits under Titles II and XVI of the Act.  (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.        Plaintiff protectively filed her applications with the Social Security Administration on October 27, 2015, for her Title II application, and September 19, 2016, for her Title XVI application.  Plaintiff alleged disability beginning May 22, 2009, with insured status ending on June 30, 2014; Plaintiff alleged disability due to carpel tunnel syndrome; obesity; coronary artery disease; depression; bipolar disorder; and marijuana abuse.  (R. at 62.)  Plaintiff's applications were denied, and she thereafter requested a hearing before an administrative law judge ("ALJ").

        3.        On January 22, 2018, ALJ Roxanne Fuller held a video hearing at which Plaintiff—represented by counsel—and Vocational Expert Jeannie Deal appeared and

testified.  (R.¹ at 85-117.)  At the time of the hearing, Plaintiff was 31 years old on the onset date, has a high school education, and past relevant work as a community program aide (light exertion work) and nurse assistant (medium exertion work performed as heavy work).

4.  The ALJ considered the case *de novo* and, on March 21, 2018, issued a written decision denying Plaintiff's applications for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed the current action, challenging the Commissioner's final decision.²  (Docket No. 1.)

5.  Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 9, 14.)  Plaintiff did not file a response.  This Court then took the motions under advisement without oral argument.  For the reasons that follow, Plaintiff's motion is **denied**, and Defendant's motion is **granted**.

6.  A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than

---

¹Citations to the underlying administrative record are designated as "R."

²The ALJ's March 21, 2018, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review on March 20, 2019.  (R. at 1.)

one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the Plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled, 482 U.S. 137, 140-142 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based

3

>       solely on medical evidence, the claimant has an impairment
>       which is listed in Appendix 1 of the regulations. If the claimant
>       has such an impairment, the [Commissioner] will consider
>       [her] disabled without considering vocational factors such as
>       age, education, and work experience; the [Commissioner]
>       presumes that a claimant who is afflicted with a "listed"
>       impairment is unable to perform substantial gainful activity.
>       Assuming the claimant does not have a listed impairment, the
>       fourth inquiry is whether, despite the claimant's severe
>       impairment, [s]he has the residual functional capacity to
>       perform [her] past work.  Finally, if the claimant is unable to
>       perform [her] past work, the [Commissioner] then determines
>       whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

  10. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460 (1983).

  11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 22, 2009, the alleged onset date. (R. at 62.) At step two, the ALJ found that Plaintiff has the following severe impairment: carpel tunnel syndrome; obesity; coronary artery disease; depression; bipolar disorder; and marijuana abuse. Id. At step

4

three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id. at 62-65.

12.     Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work except frequent handling of objects, that is gross manipulation with both hands; frequent fingering, that is fine manipulation with both hands; occasional exposure to unprotected heights; able to perform routine and repetitive tasks; able to work in a low stress, defined as having only occasional changes in the work setting; no interaction with the public; and only occasional interaction with co-workers and supervisors.  (R. at 65.)

13.     At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  (R. at 75.)  At step five, the ALJ asked the vocational expert if there were jobs in the national economy a claimant like Plaintiff could perform given her age, education, experience, and RFC.  The expert opined that such a claimant could perform such occupations as small parts assembler, inspector hand packager, or mail clerk, all light exertion occupations.  Id. at 76-77.  The ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. at 77.) Accordingly, the ALJ found that Plaintiff is not disabled.  Id.

14.     Plaintiff argues that the RFC determination is not supported by substantial evidence because there was not substantial evidence to support the RFC, since the ALJ did not rely upon any medical opinion evidence to support her findings.  (No. 9-1 at 21-24.)  Plaintiff then faults the Appeals Council for not accepting her new evidence.  (Id. at 24-28.)  Defendant retorts that substantial evidence does support the ALJ's evaluation of

Plaintiff's subjective complaints and the RFC.  (No. 14-1 at 17-26.)  Defendant argues that the additional evidence Plaintiff proposed for consideration by the Appeals Council would not change the ALJ's determination.  (Id. at 27-30.)  For the reasons that follow, Plaintiff's argument is **rejected**.

15. Plaintiff first argues that the ALJ assigned limited weight to the medical opinions in the record, thus interpreting medical data without any medical opinion.  (No. 9-1 at 21-22.)  "An RFC determination made without the benefit of a medical opinion is insufficient to support the finding with substantial evidence.  Instead, it demonstrates that the ALJ has substituted her own non-expert medical opinion for that of a physician," Marshall v. Berryhill, No. 17CV6307, 2018 WL 625430, at *2 (W.D.N.Y. Nov. 30, 2018) (Siragusa, J.).  (No. 9-1 at 22.)

16. The ALJ assigned limited weight to the opinion of Dr. Cynthia Pristach (R. at 75, 269) who provided a note for Plaintiff's employer disability claim from Plaintiff's hospitalization in July 2009.  During this hospitalization at the Erie County Medical Center, she was assigned a GAF score of 45.  (R. at 374.)  Dr. Pristach's note only stated the dates when Plaintiff was hospitalized and, as noted by the ALJ (R. at 75), made no objective findings (in fact, stated no opinion in that note).  The ALJ also gave limited weight to Dr. Jeffrey Kashin's opinion (R. at 75, 275), also part of her employer's disability application in the summer of 2009.  Dr. Kashin diagnosed Plaintiff with major depression, anxiety, compulsive behavior, concluding that Plaintiff was totally disabled and unable to work.  (R. 275, 272.)  Again, as noted by the ALJ, Dr. Kashin's opinion lacks objective findings to support his conclusion.  (R. at 75.)

17. It appears from her former employer's correspondence about her workplace disability claim that Plaintiff had not submitted an updated medical status. Her employer therefore deemed her terminated. (R. at 276.) Plaintiff did not lose her job due to her disability, instead it is from her failure to update her medical condition with her employer.

18. Plaintiff was treated with Spectrum Human Services from August 10, 2009, to approximately April 15, 2010. (R. at 282-92, 67; No. 9-1 at 5.) She received counseling for depression and cannabis abuse. (R. at 286; No. 9-1 at 5.) She responded well to the antidepressant Zoloft but reported increased anxiety due to her son's behavior. (R. at 282; No. 9-1 at 5.) Plaintiff was discharged for not returning for treatment and not responding to outreach attempts. (R. at 282; No. 9-1 at 5.) Spectrum Human Services diagnosed Plaintiff with major depression and cannabis abuse, finding her GAF score was 60 (denoting only moderate limitations), which the ALJ accepted. (R. at 286, 67.) The ALJ, however, found that an earlier GAF score of 50 (denoting serious limitations) from Spectrum was not supported by objective findings and the record was "virtually devoid of exam findings." (R. at 67, 291, 288-92.)

19. In finding the RFC, the ALJ considered Plaintiff's gaps in her treatment for her mental symptoms. (R. at 66, 72, 318 (Feb. 18, 2014, noting no complaints), 489 (June 11, 2018, initial counseling session); No. 14-1 at 21-22.) The ALJ also noted Plaintiff's improvement of her mental impairments with medication. (R. at 63-71, 102, 108, 282, 371, 434-35, 560, 564, 690, 696; No. 14-1 at 22.) Thus, the ALJ had substantial evidence for the mental impairment findings within the RFC.

20. Plaintiff argues that the ALJ rejected the medical opinions in this record and reached specific RFC findings without any medical support. The ALJ found that it was

7

unclear to her how particular limitations arise absent a medical opinion. (No. 9-1 at 23.) Plaintiff also disputes the ALJ's finding that her condition improved with treatment. (Id. at 23, 26-27.) This is a factual dispute between the parties and on judicial review this Court cannot reweigh the evidence or substitute its own judgment for that of the Commissioner, 42 U.S.C. § 405(g); see, e.g., Krull v. Colvin, 669 F. App'x 31 (2d Cir. 2016) (summary Order) (under the deferential standard of review, a court cannot reweigh evidence). "Further, it is the ALJ's duty to evaluate conflicts in the evidence," Eagan v. Commissioner, No. 18CV1428, 2020 WL 1853465, at *9 (W.D.N.Y. Apr. 13, 2020) (Bush, Mag. J.) (citing 20 C.F.R. § 404.1527(c)(i)). "If the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld," McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014).

21. The ALJ then found that Plaintiff's physical impairments due to her coronary artery disease were addressed by limiting her to light exertion work with some conditions. (R. at 74; No. 9-1 at 24.) Plaintiff faults this approach since specific physical limitations lack an explanation. (No. 9-1 at 24.)

22. Defendant points out in the record that Plaintiff's coronary condition improved with treatment manifested by normal cardiovascular and respiratory findings. (R. at 73-74, 410; No. 14-1 at 25.) Defendant explains the ALJ gave Plaintiff the benefit of the doubt in forming the physical RFC limitations in performing light work. (No. 14-1 at 26.)

23. Ultimately, Plaintiff has the burden to establish RFC limitations that exceed those found by the ALJ in the RFC, see Smith v. Berryhill, 740 F. App'x 721, 726 (2d Cir.

2018) (summary Order).  (No. 14-1 at 25.)  Plaintiff here has not shown that her physical condition was more severe than indicated by the ALJ in the RFC.

24. Plaintiff next argues that she had new evidence (post-hearing treatment notes from her psychiatrist and counselor and her cardiologist in 2017-18) that the Appeals Council refused to consider.  (No. 9-1 at 24; R. at 2.)

25. As Plaintiff noted for her psychiatric care after the insured date of June 30, 2014, and prior to the January 22, 2018, hearing (No. 9-1 at 6-11), the new evidence before the Appeals Council also post-dates her insurance coverage for Title II disability benefits.  The Appeals Council considers additional evidence that is "new, material, and relates to the period <u>on or before the date of hearing decision</u>, and there is a reasonable probability that the additional evidence would change the outcome of the decision," 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5) (emphasis added).  (No. 14-1 at 27.)

26. Plaintiff's new evidence post dates the date of last insured and reveals nothing about her mental condition between May 22, 2009, and June 30, 2014.  The Appeals Council, thus, properly disregarded this new evidence.

27. Thus, the ALJ has substantial evidence for the RFC.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 14) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:   May 13, 2020
         Buffalo, New York

                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge